Good afternoon, everyone. Welcome to the Appellate Court, 1st District, 6th Division. We'll ask the lawyers who are going to argue on the first case to step up, introduce themselves, and tell us whom you represent, please. Good afternoon, Your Honors. Assistant State Attorney Cooper Fournier on behalf of the people of the state of Illinois. I'm sorry. I'm sorry. Could you say your last name again, please? Fournier. Fournier. Thank you. Mr. Ackerman? Alan Ackerman for the Defendant Petitioner. Thank you, Counsel. We'll allow about 15 minutes for each side for argument. We may extend that if we have lots of questions. We may shorten it if we are getting repetitious. Please remember to speak loudly so your voice is picked up on the tape recording. And with that, you may begin when you're ready, Mr. Ackerman. Please, the Court. Christopher Cooper is safely in the I.D.O.C. The question is, should he be there without an evidentiary hearing in connection with his motion to suppress his confession? The Defendant maintains that he was deprived of that to which he is otherwise entitled, meaning effective assistance of counsel during very important confession suppression proceedings. In this particular case, the record reveals that defense counsel did next to nothing in connection with the suppression of his confession. His confession was not an ordinary confession. It came about under somewhat unusual circumstances, which included his being in custody at the Rosemount Police Station overnight from August 21 to August 22, 2008. At around 11ish a.m., he was supposed to get prepared to go for a bond hearing. After he was in the process of either changing into street clothes or changed already into street clothes, he asked, What's going to happen? What is a bail hearing? The words to that effect. History in this case shows he had no criminal history. He was certainly, by all accounts, mentally informed. He suffered from a level of maladies that are better imagined and realized. And with that, one of the two detectives called Warren Meech said, In substance, it doesn't matter. You're not getting bail. You're going to the Cook County Jail. Mr. Anthony, we're familiar with what happened at the Rosemount Police Station. And on this point, if we go back to this court's prior decision on the direct appeal, there's a lengthy section in there entitled, Failure to Meaningfully Challenge the Voluntariness of Defendant's Confession. So it begs the question as to what do we have here that's new? Because it looks like when Justice Quinn wrote the rather lengthy and thorough opinion a few years ago before he left the court, obviously, that the issue of the effectiveness of counsel was litigated before this court already. Why is it not res judicata this time around? Because when it was presented the first time, the affidavits of Patricia and Robin Cooper were not part of the record. And this court had no way to know that the lawyers representing young Christopher Cooper at that time, he's now 37, had the wherewithal to persuade or attempt to persuade the suppression confession judge that wait a second, there's a lot here. This young man has been infirmed from birth forward. Counsel, let's talk about the infirmity. What's his diagnosis? Well, starting with his WEISIQ Westchester, I believe it's called. During post-trial proceeding, it was registered at 66. Where'd the 79 stipulation come from? The 79 came in from somewhere that his lawyers at the suppression hearing had the state stipulate that it was a 79 IQ, but they were not asserting any mental infirmity. Now why in heaven's name they would do that can only be a matter of surmise. And I ask the court to keep in mind, he's not asking for a new trial here. He's asking for a hearing. He's asking for the opportunity, nothing more than to have a judge fairly adjudicate his confession suppression period. If he prevails on that, he probably would get a new trial because clearly that confession became the hallmark. It became the biggest part of the state's case. But wasn't the state's case also bolstered by the live testimony of the victims? By the what? But the victims also testified. She did. We don't have a simply make a confession out there by itself. No, no, no. This was, my sense of this is, these are experienced police officers. They knew without being told that look, the simple statement of the victim, and in this case a stepsister, may not be enough to carry the day for the state. We wanted a confession, or an admission, or some such thing. Thus, Harlan Hibben's name came to lawyers who had been given, according to the unrebutted affidavit, post-conviction affidavit of mother and sister, they were given the complete history, complete history, from birth forward, showing all his infirmities and the difficulties he had in doing anything other than succeeding in special ed with the benefit of two tutors for everything. And that's what the record reflects now. It didn't reflect then. Could it have? You bet. Can I ask you a question? I have a motion for new trial. There was some evidence presented relative to a Dr. Stipes and a Dr. Rabin, is that correct? Yes. And Dr. Rabin gave him something called the Grisso test. Yes. And you're familiar with this? Yes. And he scored, normal is 23 on Grisso, he scored 24. Yes. So that's true. Yes. Okay. And his doctor, his own physician, since birth or since he was a child, testified at trial. And she testified that he had been deficient from all the years she had seen him. And deficient, what does that mean? In the context of being in a police station, a custodial situation for somebody with no criminal history, and a history of, if nothing else, modest retardation. What does the law tell you? Counsel, what is modest retardation? Somebody who has an IQ of 66, somebody who can't read beyond a third grade or fourth grade level. And what's the evidence in this case as to his IQ? His IQ, what's his IQ that was stipulated to in this case? The 79 IQ was part of a stipulation where the defense said at that time, we are not claiming anything about mental retardation. So what were they claiming? What you found out later, during trial, is that one of the two detectives conceded before the jury, but not during the suppression hearing, that yes, they told him he wasn't going to get bail. Yes, they told him he was going to be in the CCJ. But he didn't recall, this is police speak now, didn't recall telling him that he would end up being somebody's bitch, and that it was full of African Americans, and so forth. Counsel, people are presumed to be competent, are they not? People are presumed to be competent. Yes. Was there a BCX done here? To my knowledge, no. So there wasn't even a question about his competency at the time of trial. But that's all part of why he should be given a hearing. He wasn't given a hearing by the trial court. The trial court denied the PTM in spite of what it had before it. So what is it that this man wants? What is it that the court might give him to show one way or the other, wait a second, we'll be fair, give him his hearing. If he prevails, fine. If he doesn't, he's got his hearing. And the hearing is his capacity at the time that he was in custody and when he waived Miranda? Is that the hearing you want? That's only part of it. The other part of it has to do with why his lawyers didn't present anything that they had, meaning the school records, the medical records, and the unrebutted affidavit of the adopted mother and stepsister was the way he's got it, not once, not twice, but three times. But didn't they put in their motions at first that he had an IQ of 79, he had restricted reading ability, spelling ability, intellectual function, that was all in his motion, was it not? And not only that. After the motion was denied, the presiding judge said, wait a second, this was silly. You presented nothing. You've never met a burden here. Well, I said, but it was in his motion. He made those recommendations. Not to interrupt you and I apologize. No problem. They filed a motion for reconsideration on the suppression hearing. Yes. It was never brought up for hearing until the trial judge brought in Judge Etchingham, I think his name is. Etchingham. I apologize. With one minute, I think it's two and a half pages of transcripts, said the motion to reconsider, I'll hear argument, no argument from the defense, motion denied, a rehearing denied. That was it. Nothing more. And they waited almost a year to do that. So, I'll get back to where I started. The law favors the opportunity to be heard. That's all he's asking for. If, if a court grants that and if he's able to mount a successful hearing, suppression hearing, based on ineffective assistance of counsel, fine. If he isn't, that's the end of it. But give him the opportunity. Thank you. Thank you, Mr. Ackerman. Ms. Swinney. May I please report, counsel? Your Honors, defendant claims that he's entitled to evidentiary hearing. However, he needs to establish certain things in order to be able to qualify for an evidentiary hearing. And I submit that the trial court properly dismissed the petition where he did not make a substantial showing of a constitutional violation. We certainly are in res judicata here. His claims are certainly barred by res judicata. And specifically, every single one of his claims currently before you, addressed in the post-conviction petition, were claims that were also addressed by this court on direct appeal and therefore are barred by res judicata. And the trial court properly ruled so in its dismissal of the petition. Specifically, the defendant now alleges that in order to circumvent res judicata, that the joint affidavit of Patricia and Robin, in addition to the defendant's affidavits attached to the petition, are essentially new evidence, is what he's claiming. However, that is not the case. Because again, what is contained in these quote-unquote new affidavits that are attached to the petition is what? It's information. Robin and Patricia's affidavit indicates that they provided trial counsel with the defendant's psychological, academic, medical records. And that he clearly did not act upon or use that information in any capacity during his defense of the defendant. Furthermore, the defendant's affidavit indicates more or less that he was coerced into giving his confession. Again, this is cumulative information that was part of the direct appeal. These are all underlying claims that this court addressed in the direct appeal and therefore are barred. Now, res judicata, sorry. Your confession is such a compelling piece of evidence that it can often overwhelm deficiencies in the direct testimony, such that a jury or a judge may find it to be dispositive. So why? I want you to comment on why you think we can get around the issue of this based on, well, there's other testimony from other witnesses. Well, so what? I mean, we have witnesses who testify that these acts were done, but the confession on top of it may or may not have been the key evidence that caused the verdict to be guilty rather than not guilty. Respectfully, Your Honor, irrespective of the defendant's confession in this case, the victim, R.C., testified. Her testimony was compelling. She testified to the years of sexual abuse at the hands of her brother. It was an adopted brother who was eight years older than her. This abuse started at six years old and culminated to the age of 13 when he impregnated her, and her mother took her for an abortion. Her testimony was credible. It was. . . But we're only at the first stage yet. So why doesn't this at least get us past the first stage? First stage of, I'm sorry? The Strickland problem. The first Strickland problem. Yes, yes, yes. In regards to making, in regards to trial counsels. . . What I'm trying to say, and I'm not being clear, and I'm sorry about that. That's okay. Is that you're painting a picture of very compelling and damning evidence presented by the two victims. But we're here on the dismissal of a post-conviction petition at the first stage. And aren't these kinds of things perhaps better resolved at a later stage of post-conviction proceedings where the court can develop the record more fully? I don't think so, and Veach actually tells us that. And I know that Veach is the case the defendant cites to in his briefs. And Veach, the Illinois Supreme Court specifically indicated that courts should not be discouraged from hearing claims in effective assistance of counsel on direct appeal as long as the record is complete and sufficient. And certainly in this case, on direct appeal, the record was complete and sufficient. Again, what this court had before it on direct appeal is essentially the same evidence that is before your honors now. And so this is not a situation where it is better left for a collateral proceeding. And this court rejected the defendant's claims, the exact same claims, more or less, on direct appeal, and this court should do the same in this instance. What this court said through Justice Quinn several years ago, and I'll only read a sentence. The record clearly shows the counsel's strategy for the motion to disperse was to attack the voluntariness of the defendant's confession based upon the circumstances under which it was given, rather than based on the defendant's mental deficiencies. And the court went on to basically say, well, that was a strategy matter. He picked one avenue of attack rather than another. But that begs the question, why wasn't it ineffective for him not to do both? They're not necessarily contradictory. Defendant is entitled to competent but not perfect representation, and it's not enough to say that another attorney with the benefit of hindsight would have done differently. Certainly here, it would not have been wise strategy to address the defendant's quote-unquote alleged intellectual challenges. We have a defendant before us who completed elementary school, who completed high school, who obtained an associate's degree at Triton College, who was able to maintain a job at Allstate Arena. In addition to that, as Your Honor mentioned, the reports of Rabin and Stipes specifically indicate, I believe it was Dr. Rabin, the Grisso test, he scored above average on that test and was able to appropriately and eloquently describe to these doctors his rights and what they meant. And this court on direct appeal indicated that and indicated that, again, considering the facts of this case and this specific defendant, certainly it probably would not have been wise strategy for this trial counsel to go down that specific avenue, considering what the defendant brought to the table in respect to his level of intelligence, which clearly he had, and in addition to his education, all of the other circumstances which indicated that he clearly understood his rights. We have an audio recorded confession, and in that audio recorded confession, it is clear that he understood his rights. And also a point that I'd like to make is that counsel does seem to hone in on the fact that the defendant invoked his rights and later was essentially tricked with the bond hearing question into reinitiating. However, I submit to Your Honors that there is no evidence that the defendant ever invoked his rights to an attorney. In fact, the evidence reveals that, and this is all part of the direct appeal record. But the attorney was there, right? Sure. And told the police, I'm your attorney. Exactly. So to the defendant privately, I don't want you talking to my client. However, the defendant personally never invoked, and yet the detectives did good police work. They did not go and try and elicit a confession out of the defendant. They kept him in custody as they were working on the paperwork in order to then take him to bond court and therefore attempted to elicit a confession out of him, even though he technically did not himself invoke his rights to counsel. And so I think that that is an important distinction to make, especially in relation to defendants' arguments. Counsel, can I ask you, as far as, again, the motion that was filed, the Attorney General Counsel did state that he was diagnosed with ADHD, a traumatic brain injury, a learning disability, et cetera, in the motion, did he not? He did, yes. But he did focus on the voluntariness as far as his argument was before the court. Your point suggests that trial counsel should have retained an expert on defendant's capacity. Do you have any response to that argument? Again, Your Honor, I would rely on that trial counsel felt that the more winnable approach, based on his professional opinion, was to attack the voluntariness of the defendant's confession in relation to that he was coerced based on the detectives making promises to him. And I would also submit that that is further substantiated by, in the petition, there are e-mail exchanges between trial counsel and the defendant's family, and in there specifically, trial counsel indicated that he had grave reservations about calling an expert in this case. So this, again, is very indicative that certainly he, and again, it's fair speculation on the defendant's part to assume that trial counsel did not actually reach out to a doctor or an expert to try and pursue that route. And yet, again, based on the case that he had before him and the facts and the circumstances surrounding that case, he chose to go the route which he felt was the most winnable based on his reasonable professional opinion. Did the pediatrician or the doctor for the defendant give any opinions within a certain degree of medical testimony at trial? Can you repeat that, Your Honor? Did the doctor for, the doctor was treating him as a child or a minor? Dr. Crowan, yes. Give any opinions within a certain degree of medical certainty at trial? Did not, no, Your Honor. And in fact, the defendant also claims that Dr. Crowan testified that the defendant was deficient all of the years that she had been treating him, and that is misplaced. Her testimony essentially was what we all know. The defendant was born with a birth defect. He had a certain amount of brain hemorrhage, which led him to have a learning disability, and he was a little bit slow in growth, and she had to refer the family to a pediatric endocrinologist. However, she never, and that he did have some special assistance at school, but certainly did not make any claims in relation to specifically his IQ or his ability, really, his intellectual ability. Therefore, again, to assume that defendant, and to make this claim that he has modest retardation, and I'm, again, quoting defense counsel, and that he can't read, there is absolutely no evidence in the record that indicates the defendant was not able to read. How would he have obtained an associate's degree? Certainly there wasn't somebody else in his place taking whatever exam he took in order to complete high school and further on his associate's degree from Triton. And if I might just go back and reiterate that the defendant also takes issue with post-trial and appellate counsel, although that's not something that he's brought up here specifically. However, I would submit to Your Honors that, A, that attorney was one and the same, post-trial and appellate counsel were the same attorney, and again, during the post-trial hearing, every single claim that is currently made now was, indeed, also made at the post-trial motion, and a very lengthy appellate brief as well. And, therefore, the defendant certainly cannot show that the outcome would have been different, as, again, the affidavits that are in the information, the reports of Saban and Stipes are part of the direct appellate record. The information that you have before you is essentially the same as the information in the direct appeal. He has failed to establish prejudice, and he certainly has failed to establish that his attorney acted below a level of reasonableness. And we would ask that you affirm the dismissal of the petition. Thank you. Mr. Ackerman, final notes for rebuttal. There cannot be trial strategy where there is no investigation and preparation. The affidavits that are appended to the post-conviction petition, and the exhibits, including e-mails, from the lawyers to the family of the defendant petitioner, disclose that they promised they would move heaven and earth to suppress these confessions, and they would show these guys what they're doing. Well, you saw a 30-page suppression hearing with no defense witnesses and almost no argument. That cannot, if the court please, be strategy. That's laziness and the lack of preparation. Finally, my opponent says that there were hearings post-trial. In other words, there were arguments of counsel post-trial. No hearings. No testimony. Thank you. Thank you. Justice Harris is the third member of the panel. He will review the tape recording of the argument and participate in our deliberations, as well, of course, as review the briefs. The matter is taken under advisement.